Lutine Realty Corp. v Perry Films, Inc. (2004 NY Slip Op 50703(U))

[*1]

Lutine Realty Corp. v Perry Films, Inc.

2004 NY Slip Op 50703(U)

Decided on March 23, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 23, 2004

Supreme Court, New York County
LUTINE REALTY CORP., Plaintiff, 
against
PERRY FILMS, INC., HART PERRY & DANA HEINZ PERRY, Defendants.
111331/03

Debra A. James, J.
This action is one of three related landlord-tenant ejectment disputes brought before this court by the owners of premises at 530 West 25th Street, New York County. According to the complaint, Plaintiff Lutine Realty Corp. is the landlord of the third floor of the building, defendant Perry Films, Inc., is a lessee and defendants Hart Perry and Dana Heinz Perry occupy the premises. The complaint alleges that defendants occupy two apartments on the third floor. The other related action before this court and Judge is Tan Holding Corp. v Eklund (Supt Ct, NY County, James, J. Index No. 111330/2003) (the "Tan Holding Corp. action"). The third action, Tan Holding Corp. v Dzurinko (Sup Ct, NY County, Shafer, J. Index No. 111332/2003) was discontinued by Order of the Court dated January 12, 2004.
Defendants in this action move to dismiss causes of action in the complaint and the plaintiff cross-moves for summary judgement. Nearly identical motions are currently pending before this court in the aforementioned Tan Holding Corp. action and this court shall resolve the pending motions in both actions by separate Orders of this same date based upon the decision herein.
The complaint sets forth five causes of action. The first cause of action seeks possession of the subject apartment occupied by the defendants on the grounds of holdover. The second cause of action seeks a declaration that the defendants have no right to claim a rent-stabilized tenancy in the apartment. The third cause of action seeks a declaration that defendants are entitled to rent for use of the premises from April 1, 2001, and an assessment of damages. The fourth cause of action seeks in the alternative a declaration that defendants are not entitled to possession of one of the apartments on the grounds that it is being used as the principal place of [*2]business of defendant Perry Films. The fifth cause of action seeks attorney's fees under the lease.
Defendants bring this motion seeking to dismiss the second and third causes of action in the complaint on the grounds of collateral estoppel, seeking to dismiss the complaint on the grounds that the plaintiff lacks capacity to sue because the corporation is dissolved, and seeking to consolidate this action with the Tan Holding Corp. action.
Defendants argue that plaintiff's second and third causes of action are barred because defendants' tenancies have already been adjudicated as subject to rent stabilization and that the plaintiff is collaterally estopped from seeking use and occupancy because prior litigation between the parties in the Civil Court, New York County, held that the premises are a de facto multiple dwelling and therefore plaintiff is barred from collecting rent under the Multiple Dwelling Law.
On or about May 9, 2000, plaintiff commenced a non-payment proceeding against defendants in Civil Court (Lutine Realty Corp. v Perry Films, Inc., Civ Ct, NY County, Index No. 75453/2000)(the "Civil Court proceeding"). Defendants answered in the proceeding raising defenses of collateral estoppel, rent stabilization, de facto multiple dwelling and the lack of a residential certificate of occupancy for the premises. The defendants moved for summary judgment but adjourned that motion on consent pending the disposition of an appeal in a prior related holdover proceeding between the parties. See Tan Holding Corp. v Wallace, 178 Misc2d 900 (Civ Ct, NY County 1998) and Tan Holding Corp. v Wallace,182 Misc2d 422 (Civ Ct, NY County 1999).
By decision dated January 10, 2001, the Appellate Term, First Department, reversed the dismissal of plaintiff's claims against defendants in the prior holdover proceeding brought by plaintiff. The Court stated

Tenants took possession of the subject loft units at 530 West 25th Street, Manhattan, pursuant to commercial leases which have since expired. While the leases limited occupancy to office or studio use, it is not disputed that tenants also resided in the premises with landlord's knowledge and acquiescence. On appeal, tenants concede that their units do not qualify for protected status under the Loft Law (Multiple Dwelling Law art 7-C). The issue that divides the parties is whether these units, situated in a building constructed prior to 1974 containing six dwelling units, qualifies for rent stabilization protection under the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended [ETPA]).
The broad remedial purpose of the Loft Law is to confer rent-stabilized status on legalized interim multiple dwellings (see, Matter of 91 Fifth Ave. Corp. New York City Loft Bd., 249 AD2d 248; Multiple Dwelling Law § 286 [13]). But this does not, as landlord argues, necessarily negate ETPA coverage for qualifying buildings which, for whatever reason, did not undergo the conversion process set forth in article 7-C (Wilson v One Ten Duane St. Realty Co., 123 AD2d 198). As noted by Civil Court, the ETPA is "inclusive" and may provide regulation for "all housing accommodations which it does not expressly except, including previously unregulated accommodations" (Matter of Salvati v Eimicke, 72 NY2d 784, 791). Permanent coverage under a rent regulatory scheme should not, however, attach to dwelling units which have not been legalized or are incapable of being legalized. In this regard, no residential certificate of occupancy has yet been obtained for the premises. [*3]The assertion that residential use is prohibited because the building is situated in a "light manufacturing district" (M1-5) does not, without more evidence, definitively resolve whether the residential use or joint living/working use of the lofts dating back to 1981 would qualify as a permitted use under the applicable zoning resolutionseven if new residential development is now excluded in the district. These questions are unanswered in the record and preclude summary determination at this stage of the proceedings.
Assuming without deciding that ETPA coverage applies to the lofts, a further issue for determination is landlord's claim to the "substantial rehabilitation" exemption (McKinney's Uncons Laws of NY § 8625 [a] [5]; ETPA § 5 [a] [5]). To this end, we conclude that landlord's motion for renewal should have been granted (see, Scannell v Mt. Sinai Med. Ctr., 256 AD2d 214) and summary judgment denied. There are triable issues as to the scope of the rehabilitation (Pape v Doar, 160 AD2d 213) and whether this is a case where the cost of the rehabilitation was "substantially borne" by the tenants (Wilson v One Ten Duane St. Realty Co., supra, at 201).
The proceedings are therefore remanded for trial on the holdover petitions in accordance with this decision. In light of our disposition, any issues as to attorneys' fees and alleged rent overcharge are premature and we do not reach them.
Tan Holding Corp v Wallace, 187 Misc2d 687, 688-689 (App Term, 1st Dept 2001) revg 178 Misc 2d 900 & 182 Misc 2d 422.
In April 2001 following the decision of the Appellate Term, plaintiff moved to amend its petition and for summary judgment in the non-payment proceeding seeking possession and back rent. The defendants cross-moved to restore their prior motion for summary judgment on the grounds that the building was a de facto multiple dwelling and opposed plaintiff's motion on the grounds that there were triable issues of fact as to the defendants' other affirmative defenses. By Order dated August 30, 2001, Judge Evans of the Civil Court denied plaintiff's "motion seeking to amend the petition and for summary judgment . . . due to non appearance." Lutine Realty Corp. v Perry Films, Inc., Civ Ct, NY County, Aug. 30, 2001, Evans, J., Index No. 75453/2000. By separate Decision/Order of the same date, the court held

Respondents' motion to restore this proceeding to the calendar and for summary judgment is granted on default of petitioner. Additionally, the motion appeared on the Part 52 calendar five times and petitioner has not interposed opposition papers. Moreover, the building is a multiple dwelling, and petitioner has previously commenced three residential proceedings against tenants in the building. The building is not registered as a multiple dwelling. Accordingly, the petition is dismissed.
Lutine Realty Corp. v Perry Films, Inc., Civ Ct, NY County, Aug. 30, 2001, Evans, J., Index No. 75453/2000.
Plaintiff argues that the Order dated August 30, 2001 of the Civil Court rendered by Judge Evans should not be given collateral estoppel effect, having been granted when its prior attorneys defaulted in both submitting papers and appearing in opposition. Legal scholars have [*4]urged flexibility and criticized any bright line application of collateral estoppel in such circumstances, which may lead to unfair results.[FN1]
In applying the doctrine to parties who were not in default but inactive despite being apprised of litigation against a party with whom they were in privity, the Court of Appeals characterized the doctrine as a flexible one:

The equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules. Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity. The policies underlying its application are avoiding relitigation of a decided issue and the possibility of an inconsistent result.
Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling. The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.
The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. "In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of ... fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings."
[*5]Buechel v Bain, 97 NY2d 295, 303 -304 (2001) (citations omitted).
Defendants urge application of the doctrine and cite Kanat v. Ochsner, 301 AD2d 456 (1st Dept 2003). In Kanat, while noting that "collateral estoppel is generally not available where the judgment in the prior action was obtained on default" (supra at 458), the court found a default judgment entered in a prior Massachusetts action preclusive on the issue of liability. It reasoned that defendants had a full and fair opportunity to fully litigate the issue of liability, but affirmatively chose not to, having appeared, answered and engaged in extensive motion practice arising from their "wilful and contumacious" failure to comply with discovery demands, which ultimately resulted in a default order against them on the issue of liability.
This court agrees with defendants that plaintiff's inaction in the Civil Court proceeding was wilful as it failed to even submit opposition papers despite five adjournments of the hearing of the motion occurring over a three month period. The sole excuse proffered by the plaintiff is law office failure on the part of its prior counsel, without any statement from that prior counsel, the only person who would have knowledge of the reasons for its neglect. Though the plaintiff claims that it did not discover the default until more than a year had passed, it would be inequitable to place the burden of the consequences of prior counsel's dereliction upon defendant.
Nevertheless, in applying the second requirement set forth by the Court in Buechel, with respect to plaintiff's second cause of action, this court finds there is no identity of issue which has necessarily been decided in the prior proceeding and that is decisive of the present action. Specifically, the Civil Court, in dismissing the Petition, never declared that defendants' tenancies were governed by the Rent Stabilization Law, having made no determination that resolves the issue framed by the Appellate Term when it stated "[p]ermanent coverage under a rent regulatory scheme should not, however, attach to dwelling units which have not been legalized or are incapable of being legalized." Tan Holding Corp v Wallace, supra.
As to plaintiff's third cause of action, the court precludes relitigation to the extent that the Petition in the prior Civil Court proceeding encompasses rent accruing prior to April 1, 2001. The Civil Court's finding that the premises at issue were a de facto multiple dwelling and not registered bars, pursuant to Multiple Dwelling Law §§ 301 and 302 (1) (b), plaintiff's claims for rent and use and occupation sought in the Civil Court proceeding. However, to the extent that plaintiff's third cause of action is for rent and use and occupancy that accrued after the conclusion of the holdover proceeding, it is not barred by any collateral estoppel effect of that ruling. Ruth v Shalom Brothers, Inc., 276 AD2d 408 (1st Dept 2000).
Plaintiff has submitted evidence demonstrating that it has been reinstated and that it therefore has the capacity to maintain this suit. See St. James Const. Corp. v Long, 253 AD2d 754, 755 (2d Dept 1998). Defendants' motion for dismissal on this ground is therefore denied.
Plaintiff's motion for summary judgment is denied as issue has not been joined pursuant to CPLR 3212 (a) and this court has not invoked CPLR 3211 (c). See Four Seasons Hotels Ltd. v Vinnik, 127 AD2d 310, 311 (1st Dept 1987) ("The court does, however, have the discretion under CPLR 3211 (c) to go behind the face of the complaint by treating the motion as though it were one for summary judgment . . . but not before the court first gives notice of its intention to so treat the motion. Such notice must come directly from the court, and should advise as to the issues the court deems dispositive of the action").
[*6]
The court also denies, without prejudice, defendants' motion to consolidate this action with the Tan Holding Corp. action at this time. Although the actions involve tenancies in the same building and raise many of the same legal issues, the actions involve different tenancies and premises. The court will however, treat the actions as related cases and coordinate an efficient discovery schedule in the cases.
Accordingly, it is
ORDERED and ADJUDGED that the defendants' motion to dismiss is DENIED as to the second cause of action; and it is further,
ORDERED and ADJUDGED that the defendants' motion is GRANTED as to the third cause of action of the complaint to the extent of rent and use and occupation demanded in the Civil Court proceeding and such is severed and dismissed; and it is further
ORDERED that the Clerk of the Court is directed to enter judgment accordingly; and it is further
ORDERED that in all other respects the defendants' motions are DENIED; and it is further
ORDERED that the plaintiff's cross-motion is DENIED; and it is further
ORDERED that the remainder of the action shall continue; and it is further
ORDERED that defendants are directed to serve an answer to the complaint within 10 days after service of a copy of this order with notice of entry; and it is further
ORDERED that the parties are hereby directed to attend a preliminary conference on April 30, 2004, at 11:00 A.M., at the Courthouse, IAS Part 59, Room 1254, 111 Centre Street, New York.
This is the decision and order of the court.
Dated: March 23, 2004 ENTER:
 
J.S.C.
Footnotes

Footnote 1:In spite of the fact that no issues are actually litigated, New York courts have provided support for the precarious doctrine that a default judgment is to be give collateral estoppel effect and is to be considered conclusive between the parties with regard to all matters essential to sustain the judgment. * * * Even if this ill-conceived rule is utilized by the courts, the default judgment can be conclusive only as to matters necessarily determined.
* * *
The creation of collateral estoppel consequence to default judgments, as articulated by New York courts, is a dangerous doctrine. Unlike the res judicata effect of a default, in which the defaulter knows to what he is committing himself, the collateral estoppel effect of a default often is revealed in a situation or context that may be far removed from the original default situation. The fundamental idea of collateral estoppel, judicial efficiency combined with an opportunity to litigate the issue in a context that makes subsequent preclusion fair and just, requires a flexible approach that is inconsistent with the flat rule articulated by New York. 10 Weinstein-Korn-Miller, NY Civ Prac ¶ 5011.30.